## People ex rel. A. T. & S. F. R. Co. v. State Board of Equalization.

*District Court of Pueblo County, July 9, 1901.*

Willard Teller, Waterman, Gast and Dubbs for plaintiffs; Attorney General Post, Patterson and Morrison for defendants.

DIXON, J., delivered the opinion of the court orally.

The question involved on this motion is an extremely interesting and important one, and I regret that I have not had the opportunity to fully elaborate the reasons which compel the decision.

This is a proceeding in *mandamus*, instituted by certain corporations, owning property subject to taxation in various counties of this state, against the State Board of Equalization, for the purpose of determining the question of the validity or invalidity of the revenue bill which appears to have been passed by the last General Assembly. An alternative writ of *mandamus* has been issued by this court, and in return thereto the defendants have filed a demurrer and a motion for change of venue, and this hearing is upon that motion.

Upon the part of the defendants, it is contended that the proper place of trial is in Arapahoe County, because, under section 26 of Mills Ann. Code, the cause of action

arose entirely in that county, and under section 27, all the defendants are residents of said county, and service was made upon them therein. So that whether section 26 or 27 applies, the defendants are entitled to a change of venue as a matter of right.

On the part of the plaintiffs, it is contended that neither section 26 or 27 has any application to the present case, but that the place of trial is to be determined by chapter 29 of Mills Ann. Code relating to the writ of *mandamus*. It is further contended that if said chapter does not apply, section 26 does apply; and that under section 26, part of the cause of action, at least, arose in Pueblo county.

The important question to be determined is whether the place of trial is to be controlled by chapter 2 of Mills Ann. Code, entitled: "Of the place of trial of civil action," or by chapter, 29, entitled; "Of the writ of *mandamus*."

The term "civil" in legal terminology is commonly used as contradistinguished from the term "criminal." So that by the phrase "civil action" is commonly understood every action or proceeding which in its nature is not criminal. In a note on page 2 of his Annotated Code, Mr. Mills enumerates over twenty civil proceedings created by the general statutes of the state, which are not touched upon by the Civil Code in any manner, which are not governed by its provisions, and which are clearly not "civil actions" within its meaning. Among the several proceedings enumerated is that of *habeas corpus*, which is strictly analagous to the proceeding in *mandamus*, in that both are instituted by the issuance of a high prerogative writ upon a sworn petition.

It is perfectly clear, therefore, that in this state the term "civil action" does not embrace every civil proceeding. So that the first question to be determined is, what, under the code, is a "civil action?"

The answer thereto must be found in section 1, which provides, "The distinction between actions at law and suits in equity, and the different forms of actions and suits heretofore existing are abolished, and there shall be in this state but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be the same at law and in equity, and which shall be denominated a civil action, and which shall be prosecuted and defended as prescribed in this act." So that under the definition given by the code, a "civil action" is an action to secure a *private right* or to redress or prevent a *private wrong*.

It is further provided by Mills Ann. Code in sec. 32, as follows: "Civil actions shall be commenced by the filing of a complaint with the clerk of the court in which the action is brought, or by the service of a summons. The complaint must be filed within ten days after the summons is issued, or the action may be dismissed without notice;" and in section 33—"The clerk shall endorse on the complaint the day, month and year the same is filed, and at any time within one month after the filing of the same, the plaintiff may have a summons issued." It will be observed that section 32 does not say that certain particular civil actions, or civil actions except as herein provided, shall be commenced by the filing of a complaint or the issuance of a summons, but civil actions generally, that is, all civil actions, so that every civil action within the definition given by the code must be instituted by *complaint* and by *summons*.

It is further provided in the code that if the defendant in a civil action shall within a certain prescribed time fail to plead to the complaint which is filed, default may be taken against him, and a judgment entered by default.

So it is clear from the plain terms of the code that "civil actions," within the code meaning, are actions brought to secure *private rights* or to redress or prevent

*private wrongs*, in which the cause of action is stated in a *complaint*, in which jurisdiction attaches by the service of a *summons*, and in which a judgment may be rendered by default.

These are the civil actions defined in section 1; these are the civil actions made the subject of chapter 2, and they are the actions for which the place of trial is fixed and determined by chapter 2, as is manifest both from the title and the text of said chapter.

It seems to me entirely too clear for argument that a proceeding by *mandamus* is not a "civil action" within this definition.

In the first place, it is not an action to secure a *private right*, or to redress or prevent a *private wrong*. It is an action to secure a *public right*, or to redress or prevent a *public wrong*. The plaintiff in the action is allowed to bring the same, not because he is the owner of the right, but because, in the language of the code, he has "a beneficial interest therein;" and when he appears and sets in operation the power of the court, the court exercises its highest jurisdiction, not to secure a private right or to redress or prevent a private wrong for the benefit of the plaintiff, but to secure a public right or to redress or prevent a public wrong for the benefit of the people at large, and the interest which the plaintiff has therein is merely incident thereto.

In addition thereto, such a proceeding is not begun by a complaint. A civil action may be brought upon a complaint verified or unverified, but a proceeding in *mandamus* must be commenced, as expressly provided by the code, by a sworn petition. Furthermore, no summons is issued, nor does jursidiction attach by the service of a summons. On the contrary, after the filing of the petition if the court is of the opinion that it should be done, there follows the issuance of the highest prerogative writ known to the law. Furthermore, in proceedings of this character

it is expressly provided that there shall be no default—there can be no judgment by default. If the defendant fails to make any return to the writ, it is the duty of the court to proceed, in the interest of the public, to hear and determine the cause as a matter of public concern, and not as a matter of private right.

In addition to these considerations, there are certain sections in chapter 29 which to my mind clearly show that the legislature in framing said chapter intended to distinguish a proceeding in *mandamus* from an ordinary civil action. The first section to which I call attention is 311, which provides: "On the return of the alternative, or the day on which the application of the writ is noticed, or such further day as the court or judge may allow, the party on whom the writ or notice shall have been served, may show cause by answer under oath, *made in the same manner as an answer to a complaint in a civil action.*

If it had regarded a proceeding in *mandamus* as a civil action, it clearly would not have used such language as is contained in section 311. It would have simply provided that the defendant could make answer as provided in the code, or could make answer as in *other* civil actions. But it is said specifically that the defendant may make answer in the same manner as to a complaint in *a* civil action. And again, in section 318, concerning the service of the writ, the code provides—"The writ shall be served *in the same manner as a summons in a civil action*, except when otherwise expressly directed by order of the court or judge." These two sections indicate beyond any question that the legislature did not regard a proceeding in *mandamus* as a "civil action."

I am of the opinion, therefore, that a proceeding in *mandamus* is not a "civil action" within the meaning of section 1, nor within the meaning of chapter 2 of Mills Ann. Code, but is *sui generis*,—an extraordinary *civil proceeding*,—and that the practice and procedure in such

proceedings is to be determined exclusively by chapter 29 of Mills Ann. Code.

This being true, we would expect to find in chapter 29 some provision made as to the manner and place of the trial of such proceedings,—and we do find it.

In section 307, jurisdiction to issue the writ is vested in every court of record in this state. In section 312, it is expressly provided that if an answer is made which raises an issue of fact, the court issuing the writ shall make an order of trial, in which order of trial *shall be designated the county in which the same shall be had.* In section 314, provision is made for motion for a new trial, to be heard by the judge before whom the trial of the issue of fact is had. In section 315, provision is made for the return of the verdict to the court issuing the writ. In section 316 provision is made for the final hearing before the court issuing the writ, and in section 317, provision is made for the rendition of the judgment upon such final hearing.

It is true that in the case of Bean v. The People, 6 Colo. page 98, some expressions are indulged in, which appear to be inconsistent with the views here expressed. But it is very clear to me that the distinction which has been here pointed out between a *"civil action"* as defined by the code and an *extraordinary civil proceeding*, was not called to the attention of the court in that case. Moreover, what was there said is clearly *obiter,*—in fact it appears to be stated as a first impression, and not as a mature and decided view. But there is a more important consideration. The decision in Bean v. The People, was rendered under the code of 1877, and these identical provisions of the code of 1877, which were declared by the supreme court to be obscure and ambiguous, were solemnly re-enacted by the Legislature in 1887. No court would be justified in setting at naught the intent of the legislature which has been solemnly expressed on two different occasions, because it is in conflict with some judicial con-

ception of what should be the policy of the law.

The conclusion which I have reached in this matter is reinforced by a consideration which seems to me to be of the utmost importance. By the constitution of this state, original jurisdiction is vested in the supreme court in cases of *mandamus, quo warranto, certiorari* and other extraordinary proceedings. It appears to me that it would be absurdly inconsistent for the legislature, in a code of civil procedure, to declare that a proceeding in *mandamus* or other analagous proceeding should be localized or that the place of trial of such proceedings should be determined by the circumstance of the residence of the parties, or by the place where the cause of action arose, when under the constitution of the state every cause of such character, originating anywhere within the confines of the state of Colorado, can be tried in the city of Denver if the supreme court chooses to assume jurisdiction.

Of course if the legislature in plain, unequivocal terms has so declared, it would be the duty of this court to obey its mandate, but certainly the court should not adopt a construction so as to bring about such an absurd result unless compelled by the plainest language. In my opinion, the constitution, by vesting original jurisdiction in the supreme court in these extraordinary proceedings, has irrevocably fixed their status; it has declared that they are neither local nor transitory, in the sense in which those terms are applied to ordinary actions; it has declared that they are extraordinary proceedings, to be used only on occasions of the greatest emergency, when all ordinary legal remedies are without avail; and that they are to be used by the courts in the exercise of their highest jurisdiction, throughout the limits of their jurisdiction,—not circumscribed by any county lines or by any considerations as to where the parties reside, or where the cause of action arose. And it is my opinion that the legislature, in framing the chapter on *mandamus*, has accepted the

status of this proceeding as fixed by the constitution itself.

It has, therefore, declared that the jurisdiction to issue such writ shall be vested in all courts of record by virtue of their jurisdiction throughout the limit and extent of their jurisdiction. It is left to the sound discretion of the court to which the application is made the question as to whether or not it is the proper court to issue the writ; and after the writ is issued, it is left to its sound discretion to determine the place where the trial shall be had if one becomes necessary.

Considering the question from this standpoint,—considering the distinction which is drawn in the code between extraordinary proceedings and ordinary civil actions, the provisions of the *mandamus* chapter are not inconsistent or ambiguous. On the contrary, to my mind, they furnish a complete and perfect system, the wisdom and policy of which is not for the courts to question. The only thing for us to determine is, whether it is "so written," and in my opinion it clearly is.

I have already spoken of the analogy between the proceeding in *mandamus* and the proceeding in *habeas corpus*. After the attempt which I have made to elucidate the distinction between extraordinary proceedings and civil actions, I wish to add thereto that it seems to me to be as incongruous to make application for a change of venue in a proceeding in *mandamus* as it would be to make such application in a proceeding of *habeas corpus*. The two in this respect are precisely on the same footing.

If the court should be mistaken on this proposition, and I cannot feel that there is any room for mistake, I am still of the opinion that, if section 26 should govern this action, a part of the cause of action arose in Pueblo county. The court must read the statutes of this state, of which it takes judicial notice, in conjunction with the petition which has been filed. In any view of the matter,

section 27 can have no application.

In applications for change of venue the policy of the courts is to grant them,—that is the inclination and the feeling; and when the litigation is between private parties over private rights, it has been the rule of this court, at least, upon even the suggestion of one of the parties to grant the change if no injustice be wrought. No reason therefore exists in the case at bar. There is no legal right in the defendants to have the venue changed, and there is no moral right; because the parties named as the defendants are only nominal defendants, appearing as representatives of the people. They have no personal interest in the controversy, other than the interest which they share in common with their thousands of fellow citizens of the state of Colorado, and they represent the citizens of Pueblo county just as they represent the citizens of Arapahoe. It is a matter of public concern, and the court, no legal right being shown, no cause being shown which appeals to its discretion, could not grant the change without evading the responsibility which rests upon it as a part of the judiciary of the state.

The court is of the opinion that the motion should be denied, and it is so ordered.